WOODRUFF LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7262. Promulgated March 15, 1927.

Increased salaries paid to each of the two principal officers and stockholders, whose experience and efforts were responsible for the unusual profits earned, *held* reasonable and deductible, where the ratio of net profits, after the deduction, to average investment was greater than such ratio in other years when lesser salaries were paid.

*H. A. Mihills, C. P. A.*, for the petitioner.
*F. O. Graves, Esq.*, for the respondent.

This proceeding results from the determination by the respondent of a deficiency in income and profits taxes for the year 1920, in the

amount of $10,880.26. The petitioner contests only that portion of the deficiency due to respondent's disallowance of $20,000, deduction claimed for salaries paid to officers, and the disallowance of $4,818.99 of the amount claimed as a depreciation deduction. At the hearing, petitioner waived the error with respect to depreciation, leaving in issue only the reasonableness of the salaries paid to officers for services rendered.

### FINDINGS OF FACT.

Petitioner is a Minnesota corporation, engaged in the wholesale and retail lumber business, with principal offices in Duluth. It was incorporated in 1907 to take over and continue the business conducted by C. B. Woodruff, as a sole proprietorship, from 1886 to 1905, and as a partnership, from 1905 to 1907, composed of C. B. Woodruff and A. W. King, under the name of The Woodruff Lumber Co. The business was taken over, upon incorporation, at its book value, and A. W. King paid in $39,200 in cash. The stock holdings, on January 1, 1920, and December 31, 1920, after a stock dividend of about 50 per cent had been declared in October, were as follows:

| Stockholder. | Jan. 1, 1920. | Dec. 31, 1920 |
|---|---|---|
| C. B. Woodruff, president | 343 | 515 |
| A. W. King, secretary-treasurer | 543 | 772 |
| Freemont Woodruff (brother of C. B. Woodruff) | 104 | 156 |
| Eva Woodruff (sister of Mrs. C. B. Woodruff) | 37 | 57 |
| Total | 1,027 | 1,500 |

Petitioner operated a sash and door factory, manufacturing sash, doors, interior finish and store work; acted as the wholesale representative of other companies located elsewhere, and was engaged in the retail lumber business. The lumber business was highly competitive and petitioner had developed a number of special lines of business which a segregation of accounts of the various branches of its business had indicated were less competitive and more profitable. It had early specialized in handling heavy timber for shipbuilding, vessel and bridge repairs, mines, grain elevator construction, and the street railway business. By 1920 it had also developed a specialty in furnishing pattern lumber and lumber suitable for manual training work in schools.

The president and secretary-treasurer were experienced lumbermen and were in complete control of the policies of the petitioner corporation. They devoted all their time to petitioner's affairs, their

office hours being from 8 a. m. to about 6 p. m.   The principal sales made during 1920 were to customers they had secured and retained as an established clientele through many years of fair dealing and service with the trade.   Woodruff, the president, had charge of a branch yard operating in the east end of Duluth.   He also did practically all of the lumber buying.   His knowledge of lumber, and his long acquaintance with those associated with the lumber mills of that vicinity, enabled him to make very advantageous purchases, especially on piling which those mills were anxious to close out.   King, the secretary-treasurer, was in charge of the sash and door factory and handled the financial affairs of the petitioner.   He also purchased the glass needed in petitioner's business and arranged for its insurance.   His knowledge of the glass market enabled him to buy advantageously.   He put the petitioner's properties in such shape as to enable petitioner to obtain unusually low insurance rates, considering the nature of the business.

Both Woodruff and King personally indorsed all of the paper of the petitioner, and were able to secure for it very liberal credit. King also borrowed money on his personal credit for the use of the petitioner, when he considered it good policy to reduce the petitioner's paper.

A composite balance sheet for the years 1917 to 1921, inclusive, is as follows:

| | December 31, 1917. | December 31, 1918. | December 31, 1919. | December 31, 1920. | December 31, 1921. |
|---|---|---|---|---|---|
| **Assets:** | | | | | |
| Cash | $221. 88 | $2, 811. 07 | $418. 06 | $420. 38 | $121. 92 |
| Accounts receivable | 65, 092. 97 | 68, 062. 70 | 95, 058. 48 | 75, 788. 10 | 89, 019. 40 |
| Bills receivable | 1, 332. 11 | 1, 598. 00 | 1, 692. 24 | 8, 339. 30 | 12, 732. 47 |
| Inventories | 112, 734. 33 | 105, 221. 78 | 118, 298. 28 | 58, 169. 27 | 65, 828. 75 |
| Liberty bonds | 1, 240. 00 | 4, 700. 00 | 7, 700. 00 | 37, 550. 00 | 23, 000. 00 |
| Other bonds | | | | 54, 000. 00 | 77, 000. 00 |
| Chattels | 11, 634. 91 | 14, 810. 86 | 18, 386. 73 | 20, 876. 73 | 20, 754. 04 |
| Machinery and tools | 22, 026. 64 | 22, 026. 64 | 26, 714. 49 | 26, 496. 99 | 26, 539. 36 |
| Boiler | 3, 818. 22 | 3, 818. 22 | 3, 818. 22 | 3, 818. 22 | 3, 818. 22 |
| Building, lumber sheds | | | 6, 465. 08 | 6, 465. 08 | 6, 465. 08 |
| Building, factory | 16, 528. 74 | 16, 860. 44 | 10, 395. 36 | 10, 395. 36 | 10, 395. 36 |
| Building, office | 7, 155. 06 | 7, 518. 90 | 7, 518. 90 | 7, 518. 90 | 7, 518. 90 |
| Office furniture | 1, 533. 59 | 1, 819. 29 | 1, 836. 31 | 2, 017. 75 | 2, 017. 75 |
| Prepaid expense | 2, 058. 07 | 2, 883. 27 | 2, 511. 83 | 237. 51 | |
| | 245, 376. 52 | 252, 131. 17 | 300, 813. 98 | 312, 093. 79 | 345, 211. 25 |
| **Liabilities:** | | | | | |
| Notes payable | | 20, 875. 00 | 22, 700. 00 | 4, 000. 00 | 9, 000. 00 |
| Accounts payable | | 13, 209. 20 | 28, 359. 06 | 30, 554. 08 | 30, 064. 88 |
| Accrued taxes | | 994. 19 | 1, 148. 16 | 3, 648. 75 | 1, 668. 03 |
| Accrued labor | 43, 407. 44 | 1, 992. 16 | 2, 823. 18 | 1, 787. 45 | 2, 412. 21 |
| Depreciation reserve | 55, 127. 10 | 60, 685. 22 | 68, 334. 57 | 75, 983. 85 | 77, 508. 71 |
| Capital stock | 86, 100. 00 | 86, 100. 00 | 100, 000. 00 | 150, 000. 00 | 166, 500. 00 |
| Surplus | 60, 741. 98 | 68, 275. 40 | 77, 449. 01 | 77, 449. 01 | 58, 057. 42 |
| | 245, 376. 52 | 252, 131. 17 | 300, 813. 98 | 312, 093. 79 | 345, 211. 25 |

The net sales of petitioner, for the years 1907 to 1922, inclusive, are as follows:

| Period ended— | Amount | Period ended— | Amount. |
|---|---|---|---|
| Nov. 30, 1907 | $329, 976. 37 | Dec. 31, 1915 | $194, 277. 42 |
| Nov. 30, 1908 | 302, 559. 99 | Dec. 31, 1916 | 260, 710. 51 |
| Nov. 30, 1909 | 285, 881. 96 | Dec. 31, 1917 | 396, 234. 45 |
| Nov. 30, 1910 | 337, 476. 91 | Dec. 31, 1918 | 480, 560. 23 |
| Dec. 31, 1911, 13 months | 245, 035. 84 | Dec. 31, 1919 | 539, 428. 48 |
| Dec. 31, 1912 | 222, 370. 22 | Dec. 31, 1920 | 547, 998. 66 |
| Dec. 31, 1913 | 243, 272. 82 | Dec. 31, 1921 | 340, 852. 70 |
| Dec. 31, 1914 | 226, 295. 30 | Dec. 31, 1922 | 431, 702. 02 |

A condensed statement of petitioner's operations during the years 1917 to 1921, inclusive, is as follows:

| | 1917. | | 1918. | | 1919. | |
|---|---|---|---|---|---|---|
| | Amount. | Per cent to sales. | Amount. | Per cent to sales. | Amount. | Per cent to sales. |
| Net sales | $396, 234. 45 | 100. 00 | $480, 560. 23 | 100. 00 | $539, 428. 48 | 100. 00 |
| Cost of goods sold | 270, 142. 72 | 68. 18 | 356, 579. 35 | 74. 20 | 368, 026. 28 | 68. 23 |
| Gross profit | 126, 091. 73 | 31. 82 | 123, 980. 88 | 25. 80 | 171, 402. 20 | 31. 77 |
| Other income | 6, 088. 16 | 1. 54 | 6, 497. 65 | 1. 35 | 8, 423. 63 | 1. 56 |
| | 132, 179. 89 | 33. 35 | 130, 478. 53 | 27. 15 | 179, 825. 83 | 33. 33 |
| Operating expense [1] | 95, 196. 20 | 24. 02 | 98, 260. 79 | 20. 45 | 125, 565. 13 | 23. 27 |
| Depreciation | 6, 623. 68 | 1. 67 | 5, 558. 12 | 1. 15 | 7, 649. 35 | 1. 42 |
| | 101, 819. 88 | 25. 69 | 103, 818. 91 | 21. 60 | 133, 214. 48 | 24. 69 |
| Officers' salaries | 30, 360. 01 | 7. 66 | 26, 659. 62 | 5. 55 | 46, 611. 35 | 8. 64 |
| | 5, 400. 00 | 1. 36 | 9, 600. 00 | 2. 00 | 15, 600. 00 | 2. 89 |
| Net profit | 24, 960. 01 | 6. 30 | 17, 059. 62 | 3. 55 | 31, 011. 35 | 5. 75 |

| | 1920. | | 1921 | |
|---|---|---|---|---|
| | Amount. | Per cent to sales. | Amount. | Per cent to sales. |
| Net sales | $547, 998. 66 | 100. 00 | $340, 852. 70 | 100. 00 |
| Cost of goods sold | 334, 247. 76 | 60. 99 | 194, 532. 96 | 57. 05 |
| Gross profit | 213, 750. 90 | 39. 01 | 146, 319. 74 | 42. 93 |
| Other income | 6, 092. 99 | 1. 11 | 11, 127. 26 | 3. 26 |
| | 219, 843. 89 | 40. 12 | 157, 447. 00 | 46. 19 |
| Operating expense [1] | 140, 472. 59 | 25. 63 | 110, 680. 76 | 32. 47 |
| Depreciation | 7, 649. 28 | 1. 40 | 1, 524. 86 | . 45 |
| | 148, 121. 87 | 27. 03 | 112, 205. 62 | 32. 92 |
| Officers' salaries | 71, 722. 02 | 13. 09 | 215, 241. 38 | 13. 27 |
| | 40, 000. 00 | 7. 30 | 20, 000. 00 | 5. 87 |
| Net profit | 31, 722. 02 | 5. 79 | 25, 241. 38 | 7. 40 |

[1] Exclusive of depreciation and officers' salaries.

The large profits during 1920 were in part due to advantageous purchases of lumber and glass when prices were low in 1919. The large supply of materials on hand necessitated the buying, in 1920, of only enough to fill in. A minimum of buying at high 1920 prices,

and the unusual sales made during that year, left petitioner with a small amount of goods on hand at the close of 1920 when prices were lower.

The president and secretary-treasurer were the only stockholders who were regularly engaged in the petitioner's affairs and were the only officers to whom salaries were paid. Fremont Woodruff, a brother of the president, was vice president, but, aside from acting in an advisory capacity, he rendered no services. During years prior to 1920, the petitioner needed capital and the officers sought to develop the business on a conservative basis. Their salaries were fixed on the basis of their actual needs. Prior to 1917, they each drew $175 per month. During 1918, they each drew $225 per month for the first six months, and $400 per month for the remainder of the year, and a bonus of $3,000 each. During 1920, they each drew $400 per month and a bonus sufficient to make the salary paid to each, in that year, total $20,000. The bonus payments were informally authorized by the two officers, who controlled the petitioner's policies, and were paid within the year.

During 1920, the employees of the petitioner numbered between 60 and 70, which was a substantially larger number than had been formerly employed. Beginning with the year 1918, the petitioner adopted the custom, then prevalent in that locality, of paying bonuses to employees rather than increasing fixed salaries. The bonuses paid to employees and officers during the years 1918 to 1921, inclusive, are shown by the following table:

|  | Position held. | Amount. |
|---|---|---|
| **1918** | | |
| Aug. Wickman | Yard foreman | $200.00 |
| N. A. Zetterlund | Millwright | 450.00 |
| N. Jenson | Bookkeeper | 300.00 |
| **1919** | | |
| W. Gerken | Clerk | 250.00 |
| N. Jenson | Bookkeeper | 500.00 |
| Chas. Dice | Superintendent | 350.00 |
| N. A. Zetterlund | Millwright | 700.00 |
| Aug. Wickman | Yard foreman | 350.00 |
| A. W. King | | 3,000.00 |
| C. B. Woodruff | | 3,000.00 |
| **1920.** | | |
| N. Jenson | Bookkeeper | 1,600.00 |
| Chas. Dice | Superintendent | 1,000.00 |
| Russell Dice | Estimator | 800.00 |
| N. A. Zetterlund | Millwright | 200.00 |
| Hazel Gray | Cost accountant | 600.00 |
| E. E. Williams | Estimator | 200.00 |
| C. W. Stark | Estimator | 700.00 |
| W. Gerken | Clerk | 200.00 |
| Aug. Wickman | Yard foreman | 300.00 |
| Leonard Ohman | Cabinet foreman | 100.00 |
| A. W. King | | 15,200.00 |
| C. B. Woodruff | | 15,200.00 |
| **1921** | | |
| A. W. King | | 5,200.00 |
| C. B. Woodruff | | 5,200.00 |

The petitioner corporation has been successful in its operations from the beginning. It has paid dividends in every year except one. The average investment and the percentage of net profits earned thereon for the years 1917 to 1921, inclusive, are shown by the following table:

| | 1917. | 1918. | 1919. | 1920. | 1921. |
|---|---|---|---|---|---|
| As at January 1: | | | | | |
| Capital stock outstanding | $76,100.00 | $86,100.00 | $86,100.00 | $100,000.00 | $150,000.00 |
| Surplus and undivided profits | 51,869.97 | 60,741.98 | 68,275.40 | 77,449.01 | 47,119.66 |
| Total | 127,969.97 | 146,841.98 | 154,375.40 | 177,449.01 | 197,119.66 |
| As at December 31: | | | | | |
| Capital stock outstanding | 86,100.00 | 86,100.00 | 100,000.00 | 150,000.00 | 166,500.00 |
| Surplus and undivided profits | 60,741.98 | 68,275.40 | 177,449.01 | 47,119.66 | 58,057.42 |
| Total | 146,841.98 | 154,375.40 | 177,449.01 | 197,119.66 | 224,557.42 |
| Grand total | 274,811.95 | 301,217.38 | 331,824.41 | 374,568.67 | 421,677.08 |
| Average investment | 137,405.97 | 150,608.69 | 165,912.21 | 187,284.34 | 210,838.54 |
| Net profit | 24,960.01 | 17,059.62 | 31,011.35 | 31,722.01 | 25,241.38 |
| Per cent net profit to average investment | 18.17% | 11.33% | 18.69% | 16.94% | 11.97% |

The petitioner claimed the $40,000 paid to its president and secretary-treasurer as a deduction in its return for 1920. An examining revenue agent took no exception to the salary deduction as claimed. The respondent determined that the salaries paid to the two officers were in excess of reasonable compensation for services rendered, and disallowed $10,000 of the salary paid to each officer, or $20,000 of the deduction claimed, as unreasonable.

OPINION.

MILLIKEN: The only question presented is whether the salary of $20,000 paid to each of the two officers during 1920 was reasonable compensation for personal services actually rendered in that year. The evidence is all to the effect that the compensation paid was reasonable compensation for the services rendered. The two officers were men of long experience in the lumber business. They were responsible for the successful growth of the business in former years, as well as its successful operations in 1920. They kept in close touch with the markets and were skillful buyers. The unusual sales of 1920 were due almost entirely to their efforts. The net profits of the petitioner corporation for 1920, after the salaries and all other expenses had been paid, represented a return of 16.94 per cent on the average investment for the year. The ratio of net profits to average investment for 1920 is greater than the average over the five-year period from 1917 to 1921.

We are of the opinion that, measured by the results accomplished, both from the standpoint of volume of business transacted and

profits to the corporation arising therefrom, the salaries paid to its officers were not unreasonable or excessive for the services rendered. The deficiency will be recomputed, allowing the $40,000 salary deduction claimed.

*Judgment will be entered on 15 days' notice, under Rule 50.*